IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, | Case No. 17-cv-2915 |
| *Plaintiffs*, | Judge |
| v. | Magistrate Judge |
| MIRACLE EXPRESS, INC., a Minnesota corporation, | |
| *Defendant*. | |

# COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health and Welfare Fund" and together with the Pension Fund collectively referred to as the "Funds"), and Arthur H. Bunte, Jr., one of the Funds' present trustees, allege as follows:

## JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and is a suit to recover employer contributions owed to the Funds by Defendant in accordance with applicable collective bargaining and trust fund agreements.

2. This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.    Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Funds are "employee benefit plans" as that term is defined in ERISA and are administered at their principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Funds' Trust Agreements which designate this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4.    The Pension Fund is an employee benefit plan and trust, with its principal office located at 9377 West Higgins Road in Rosemont, Illinois.

5.    The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6.    The Health and Welfare Fund is an employee benefit plan and trust, with its principal office located at 9377 West Higgins Road in Rosemont, Illinois.

7.    The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of

the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

8. Plaintiff Arthur H. Bunte, Jr. is a trustee and "fiduciary" of the Funds as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Arthur H. Bunte, Jr. is authorized to bring this action on behalf of the Funds and their participants and beneficiaries in his capacity as a trustee and fiduciary.

9. Defendant Miracle Express, Inc. ("Miracle Express") is a corporation organized under the laws of the State of Minnesota. Miracle Express is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

10. Local Union No. 120 ("Local 120") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of Miracle Express and employees of other employers in industries affecting interstate commerce.

11. During all relevant times, Miracle Express and Local 120 have been parties to a collective bargaining agreement ("CBA") pursuant to which Miracle Express has been required to make contributions to the Funds on behalf of certain of its covered employees.

12. Miracle Express and Local 120 are also parties to a Participation Agreement which requires Miracle Express to pay contributions to the Funds.

13. Miracle Express is also a signatory to a Non-Bargaining Unit Participation Agreement ("Non-Bargaining Unit PA"), which requires Miracle Express to "contribute to the Health and Welfare Fund on behalf of each Non-Unit Employee for each week during which the Non-Unit Employee works or receives compensation ..."

14. Miracle Express agreed to be bound by the terms of the Pension Fund's Trust Agreement and the Health and Welfare Fund's Trust Agreement (collectively, the "Trust Agreements") and all rules and regulations promulgated by the Trustees under said Trust Agreements.

15. Under the Trust Agreements, Miracle Express was required to "remit continuing and prompt Employer Contributions to the [Funds] as required by the applicable collective bargaining agreement ..."

16. The Pension Fund's Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). […] Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest

is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

17. The Health and Welfare Fund's Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged by the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

18. The Funds rely upon participating employers to self-report the work history of eligible employees. Based upon the employee work history reported by participating employers, the Funds bill the employers for contributions. The self-reporting system requires the participating employer to initially establish a base group of employees for whom contributions are due; thereafter, the employer must notify the Funds on a monthly basis of any changes in the

employment status of covered employees. If no changes are reported by the employer, the Funds assume the same employees are still working and prepare the employer's monthly contributions bill accordingly.

## **STATUTORY AUTHORITY**

19. Section 515 of ERISA, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

20. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

21. Based upon the employee work history reported to the Funds by Miracle Express, Miracle Express has breached the provisions of ERISA, the CBA, the Participation Agreement, the Non-Bargaining Unit PA, and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds.

22. Despite demands that Miracle Express perform its statutory and contractual obligations with respect to making contributions to the Funds, Miracle Express has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 21.

23. Miracle Express owes the Pension Fund $118,311.52 for unpaid contributions (not including interest) and two delinquent insufficient funds fees for the period of December 27, 2015 through March 25, 2017, as a result of the conduct set forth in paragraph 21.

24. Miracle Express owes the Health and Welfare Fund $110,325.94 for unpaid contributions (not including interest) for the period of August 28, 2016 through March 25, 2017, as a result of the conduct set forth in paragraph 21.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of the Funds, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i) the unpaid contributions owed to the Funds based upon the employee work history reported by Defendant;

    (ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth

(15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

 (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

 (iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Lois J. Yu*
Lois J. Yu, Attorney (ARDC #6321772)
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018-4938
(847) 939-2116
lyu@centralstatesfunds.org

April 18, 2017